**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | |
|---|---|
| DANIELLE LEROY, ) | |
| ) | |
| Plaintiff, ) | |
| ) | Case No. 1:20-cv-06203 |
| v. ) | |
| ) | Judge John Robert Blakey |
| INGALLS MEMORIAL HOSPITAL, ) | |
| Through its Servants and Agents, and ) | |
| DR. ZEHRA AFTAB, ) | |
| ) | |
| Defendants. ) | |

**MEMORANDUM OPINION AND ORDER**

Plaintiff Danielle LeRoy brings various federal and state claims against Defendant Ingalls Memorial Hospital and Defendant Dr. Zehra Aftab in connection with her 2018 involuntary commitment at Ingalls. [1-3]. Both Defendants move to dismiss, [9], [10]. For the reasons explained below, this Court grants Defendants' motions and dismisses Plaintiff's federal claims. With the federal claims gone, the Court declines to exercise supplemental jurisdiction over Plaintiff's state-law claims, and remands those claims to the Circuit Court of Cook County.

**I.  Background**

Ingalls operates a licensed private hospital in Harvey, Illinois that treats patients with mental illnesses. [1-3] at ¶ 1. Dr. Aftab works as a licensed psychiatric physician in Illinois. *Id.* at ¶ 2. Plaintiff is an adult who was involuntarily admitted to Ingalls following her visit to the University of Chicago Emergency Room. *Id.* at ¶¶ 3–4.

1

### A. Initial Hospitalization at Ingalls

On or about July 3, 2018, at approximately 8:00 a.m., Plaintiff was taken to the University of Chicago Emergency Room after suffering from extreme stress and sleep deprivation. *Id.* at ¶ 4. After examination, the hospital determined Plaintiff to be disoriented. *Id.* When Plaintiff refused psychotropic medication, the hospital administered the medication to her forcefully, which increased Plaintiff's disorientation. *Id.* at ¶ 5. The emergency room physician determined that Plaintiff needed immediate hospitalization under 405 ILCS 5/3-600 because she was a person with mental illness who presented a risk of harm to others or herself. *Id.* at ¶ 6. The emergency room physician then completed a Petition for Involuntary Admission, as required by the Illinois Mental Health and Developmental Disabilities Code. *Id.*

The next day, July 4, 2018, Plaintiff was transferred and admitted to Ingalls. *Id.* at ¶ 7. After her transfer to Ingalls, Plaintiff repeatedly asked to be informed about the process of release and to discuss her rights with an attorney, but she was never allowed to contact an attorney. *Id.* at ¶¶ 9–10.

On or about July 5, 2018, counselor Kathy Brkejani entered Plaintiff's room and asked Plaintiff to sign voluntary admission paperwork. *Id.* at ¶ 11. After Plaintiff requested time to read the documents, Brkejani frowned and left the room with the paperwork. *Id.* Upon return, Brkejani gave Plaintiff a "Notification of Hearing" for involuntary commitment, which set a hearing date for July 9, 2018. *Id.* at ¶ 12. When Plaintiff asked for immediate access to an attorney, Brkejani informed her she did not have enough time. *Id.*

Plaintiff alleges that, on or about July 6, 2018, Dr. Aftab and Brkejani falsely told Plaintiff that the only way they would release her was if she signed an authorization for the release of her medical records to her husband and an application for voluntary admission. *Id.* at ¶¶ 9, 13. Plaintiff claims that Dr. Aftab and Brkejani threatened her with a longer involuntary commitment if she did not sign the paperwork. *Id.* at ¶ 13. Plaintiff additionally asserts that Dr. Aftab and Brkejani made these false statements to coerce Plaintiff's consent to a voluntary admission; that result, Plaintiff claims, would allow Ingalls and Dr. Aftab to avoid presenting the involuntary petition in court within five days of admission as required by the Code. *Id.*

As the July 9 hearing date approached, Plaintiff inquired as to whether she would be transported to court to attend the hearing and whether she would have access to an attorney beforehand. *Id.* at ¶ 14. Brkejani and Dr. Aftab refused to answer any of these questions. *Id.* at ¶ 15. After July 9 passed without a hearing, Plaintiff gave Dr. Aftab a written request to be discharged on July 10, which Dr. Aftab refused to accept. *Id.* at ¶ 29.

On July 12, 2018, Brkejani gave Plaintiff another Notification of Hearing for involuntary commitment which set a hearing date for July 16, 2018. *Id.* at ¶ 16. According to Plaintiff, Brkejani falsely told Plaintiff that her husband would be attending the hearing to "have her involuntarily committed." *Id.* at ¶ 17. Plaintiff claims that her husband had no intention of attending; in fact, her husband had not been given any information as to why Plaintiff remained at Ingalls. *Id.*

That same day, in reliance upon the false statements made by Dr. Aftab and Brkejani, Plaintiff signed an Application for Voluntary Admission in hopes of being released. *Id.* at ¶ 31. Ingalls continued to hold Plaintiff until July 17, 2018, and neither Ingalls nor Aftab ever took her to court. *Id.* at ¶¶ 37–38.

### B. Chemical Restraints and Assault

Plaintiff additionally asserts that, during her stay at Ingalls, Ingalls' actual and apparent agents forcefully administered psychotropic medications without Plaintiff's consent on at least seven different occasions. *Id.* at ¶¶ 23–24, 47. Plaintiff claims that Ingalls' agents administered these injections to restrain, punish, and control Plaintiff for the convenience of staff. *Id.* At no time did Ingalls inform Plaintiff of her rights with respect to the use of chemical restraints, including Plaintiff's right to receive incident notices. *Id.* at ¶¶ 23–26, 55.

Plaintiff also claims that Ingalls' staff subjected Plaintiff to bullying and physical and sexual abuse. *Id.* at ¶ 64. Specifically, she claims that Courtney H., a Behavioral Health Technician, physically attacked Plaintiff on July 7 while she was standing outside of her room. *Id.* at ¶ 79. Later, on July 12, Courtney H. allegedly called Plaintiff a "slut" and accused Plaintiff of having sex with male patients. *Id.*

On or about July 13, 2018, a male Behavioral Health Technician solicited sex from Plaintiff and told her that sometimes patients have sex with Behavioral Health Technicians in order to secure their release. *Id.* at ¶ 68. The same day, another male Behavioral Health Technician solicited sex from Plaintiff by explaining to her that he had a sexual relationship with the patient next door. *Id.* at ¶ 69. On July 14, an

4

additional male Behavioral Health Technician asked Plaintiff to perform a private dance for him. *Id.* at ¶ 67. Although Plaintiff refused, the Behavioral Health Technician began recording Plaintiff with his cellphone. *Id.* On two separate occasions, male staff entered Plaintiff's room unannounced. *Id.* at ¶ 70. On July 16, another Ingalls employee attempted to slam a door on Plaintiff's foot when she requested water from the nursing station. *Id.* at ¶ 80.

### C. This Lawsuit

On June 30, 2020, Plaintiff filed a *pro se* complaint in the Circuit Court of Cook County, asserting only Illinois state-law claims. [1-1]. Plaintiff subsequently retained counsel and filed an amended complaint on September 17, 2020, which added new federal claims. [1-3]. Ingalls then removed the case to this Court on October 19, 2020. [1] at 1.

Plaintiff's amended complaint alleges: battery against Ingalls (Count I); fraudulent concealment of battery against Ingalls and Dr. Aftab (Count II); assault and sexual assault against Ingalls (Count III); fraud against Ingalls and Dr. Aftab (Count IV); intentional infliction of emotional distress against Ingalls and Dr. Aftab (Count V); disability discrimination in public accommodations under Title III of the Americans with Disabilities Act against Ingalls (Count VI); disability discrimination by a federally funded program under section 504 of the Rehabilitation Act against Ingalls (Count VII); disability discrimination under section 1557 of the Patient Protection and Affordable Care Act against Ingalls (Count VIII); and civil conspiracy against Ingalls and Dr. Aftab (Count IX). [1-3].

Ingalls and Dr. Aftab both move to dismiss all claims against them. [9]; [10].[1] In response, Plaintiff concedes the dismissal of her ADA claim in Count VI, but she opposes dismissal of the other claims. [12] at 13.

## II. Legal Standard

To survive a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), a complaint must set forth a "short and plain statement of the claim" showing that the pleader merits relief, Fed. R. Civ. P. 8(a)(2), so that the defendant has "fair notice" of the claim "and the grounds upon which it rests." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)). Additionally, a complaint must contain sufficient factual allegations to "state a claim to relief that is plausible on its face"—one that "allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 556, 570). This plausibility standard does not equate to a probability standard; however, it asks for more than a "sheer possibility" that defendant engaged in unlawful behavior. *Iqbal*, 556 U.S. at 678. When evaluating a complaint, this Court accepts as true all well-pleaded allegations and draws all reasonable inferences in favor of the plaintiff. *Id.* This Court does not accept legal conclusions set forth in the complaint as true. *Cornielsen v. Infinium Capital Mgmt., LLC*, 916 F.3d 589, 603 (7th Cir. 2019).

---

[1] Dr. Aftab adopted Ingalls' arguments in support of her motion to dismiss, [9] at 1.

### III. Analysis

Defendants have moved to dismiss all of Plaintiff's claims, both federal and state. As noted above, Plaintiff concedes that her Count VI ADA claim must go. But she opposes the dismissal of her other federal disability discrimination claims, Counts VII and VIII. The Court begins its analysis with these claims, before considering Plaintiff's state law claims.

#### A. Plaintiff's Federal Claims for Disability Discrimination under the Rehabilitation Act (Count VII) and the Affordable Care Act (Count VIII)

In Counts VII and VIII, Plaintiff alleges that Ingalls intentionally discriminated and harassed her solely by reason of her disability in violation of the Rehabilitation Act, 29 U.S.C. § 794 (Count VII), and the Patient Protection and Affordable Care Act (ACA), 42 U.S.C. § 18116 (Count VIII). [1-3] at ¶¶ 105–25. Ingalls moves to dismiss both counts, arguing that Plaintiff alleges neither a specific disability nor that she was "otherwise qualified" for the services allegedly denied to her. [10] at ¶ 23.

Pursuant to section 504 of the Rehabilitation Act, "no otherwise qualified individual with a disability in the United States . . . shall, solely by reason of her or his disability, be excluded from the participation in, be denied benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance." 29 U.S.C. § 794(a). Similarly, the ACA provides: "an individual shall not, on the ground prohibited by . . . section 794 of Title 29, be excluded from participation in, be denied the benefits of, or be subjected to discrimination under,

7

any health program or activity, any part of which is receiving Federal financial assistance." 42 U.S.C. § 18116.

To state a claim under section 504 of the Rehabilitation Act, a complaint must allege that: (1) plaintiff is a "handicapped individual" under the Act; (2) plaintiff is "otherwise qualified" for the benefit sought; (3) the program in question receives federal financial assistance; and (4) plaintiff was discriminated against solely because of her handicap. *Reed v. Columbia St. Mary's Hosp.*, 915 F.3d 473, 484 (7th Cir. 2019). Claims brought under the ACA import the same standard and burden of proof as Rehabilitation Act claims. *See Audia v. Briar Place, Ltd.*, No. 17 CV 6618, 2018 WL 1920082, at *3 (N.D. Ill. Apr. 24, 2018); *Briscoe v. Health Care Serv. Corp.*, 281 F. Supp. 3d 725, 737–38 (N.D. Ill. 2017); *accord Doe v. CVS Pharmacy, Inc.*, 982 F.3d 1204, 1210 (9th Cir. 2020); *Doe v. BlueCross BlueShield of Tenn., Inc.*, 926 F.3d 235, 239 (6th Cir. 2019).

Broad, generic assertions of "disability" fail to meet the pleading requirements necessary to establish a claim under the Rehabilitation Act. *See Jackson v. Nw. Univ. Sch. of L.*, No. 10 C 1986, 2010 WL 5174389, at *3 (N.D. Ill. Dec. 15, 2010) (holding that a conclusory allegation of "disability," without more, cannot withstand a motion to dismiss a claim under the Rehabilitation Act); *see also Knox v. Rhodes*, No. 08-cv-277-JPG, 2010 WL 1418568, at *3 (S.D. Ill. Apr. 6, 2010). In *Knox*, a plaintiff pled a violation of the Rehabilitation Act and claimed she qualified as an individual with a disability because she suffered from a "mental illness." 2010 WL 1418568, at *3. The

8

court held the bare assertion of "mental illness," without more, failed to conform to Rule 8(a)(2) and, thus, dismissed the claim. *Id.*

Like the plaintiff in *Knox*, Plaintiff here makes only a broad assertion of her disability by claiming that she was "perceived to have a mental illness" and is therefore a qualified individual under the Rehabilitation Act. [1-3] at ¶ 119. This vague allegation does not adequately provide Ingalls with notice of the specific disability for which Plaintiff was allegedly discriminated. Therefore, Plaintiff does not sufficiently plead the first element of her claim under the Rehabilitation Act. *See Jackson*, 2010 WL 5174389, at *3; *Knox*, 2010 WL 1418568, at *3.

More importantly, Plaintiff also fails to plausibly allege that she was "otherwise qualified" for any treatment. Initially, Ingalls raised this deficiency in its motion to dismiss. [10] at ¶¶ 23, 26. Because Plaintiff failed to respond to this argument, *see generally* [12], she concedes this point. *See Bonte v. U.S. Bank N.A.*, 624 F.3d 461, 466 (7th Cir. 2010) ("Failure to respond to an argument . . . results in waiver."); *Williams v. REP Corp.*, 302 F.3d 660, 667 (7th Cir. 2002) (holding that plaintiff's failure to respond to an argument in his reply brief resulted in waiver).

Regardless, Plaintiff's allegations undermine any claim that she was "otherwise qualified" for treatment under the Rehabilitation Act. To be "otherwise qualified" for the treatment allegedly denied, absent the patient's handicap, the patient must be eligible for treatment. *Grzan v. Charter Hosp. of Nw. Ind.*, 104 F.3d 116, 120–21 (7th Cir. 1997), *abrogated on other grounds by Olmstead v. L.C.*, 527 U.S. 581 (1999); *Heth v. LaSalle County*, No. 19 C 1096, 2019 WL 6327364, at *5 (N.D.

9

Ill. Nov. 26, 2019) (dismissing the plaintiff's Rehabilitation Act claim because he was unable to show he was otherwise qualified for the allegedly denied service but for his disability). Conversely, a patient is not "otherwise qualified" if the patient would not have received treatment without suffering from the disability. *Grzan*, 104 F.3d at 120–21. In *Grzan*, a psychiatric patient brought a Rehabilitation Act claim against her treating hospital, claiming that the hospital discriminated against her after admitting her for treatment of her "major depressive episode," "borderline personality disorder," and "post-traumatic stress disorder." *Id.* at 118. The district court dismissed the claim because the plaintiff was not "otherwise qualified" for the treatment under the Rehabilitation Act. *Id.* at 118–19. The Seventh Circuit agreed and affirmed the dismissal of the plaintiff's claim, reasoning that "absent her handicap, she would not have been eligible for treatment in the first place." *Id.* at 121.

*Grzan* stands on all fours here. Plaintiff alleges she was denied access to the "services, programs, facilities, activities, and accommodations offered by Ingalls" solely by reason of her perceived mental illness. [1-3] at ¶ 113. Yet Ingalls treats psychiatric patients and admitted Plaintiff specifically for the purpose of providing her mental health treatment. [1-3] at ¶¶ 1–7. In other words, had Plaintiff not suffered from mental illness, Ingalls would not have admitted her or offered her any treatment. Therefore, like the patient in *Grzan*, 104 F.3d at 121, Plaintiff was not "otherwise qualified" for the treatment and does not plausibly plead the second element of her Rehabilitation Act claim.

10

For these reasons, this Court finds Plaintiff has failed to set forth two of the necessary elements of her Rehabilitation Act claim. Additionally, because Plaintiff's ACA claim adheres to the same standard and burden of proof, this Court grants Ingalls' motion to dismiss with respect to both claims and dismisses Counts VII and VIII.

### B. Plaintiff's State Law Claims and Supplemental Jurisdiction

Plaintiff's remaining claims all allege violations of state law. The Seventh Circuit has instructed that, as a general rule, when a district court has dismissed all of a plaintiff's federal claims, the district court should relinquish supplemental jurisdiction over state-law claims rather than resolve them on the merits. *Cortezano v. Salin Bank & Tr. Co.*, 680 F.3d 936, 941 (7th Cir. 2012); *Wright v. Associated Ins. Cos. Inc.*, 29 F.3d 1244, 1252 (7th Cir. 1994) (pendent claims "should be left to the state courts."); 28 U.S.C. § 1367(c). Plaintiff conceded the dismissal of her Americans with Disabilities Act claim in Count VI, and this Court has dismissed both her Count VII Rehabilitation Act claim and Count VIII ACA claim. As a result, no federal claim remains, and, consistent with the Seventh Circuit's directive, this Court declines to exercise supplemental jurisdiction over the remaining state-law claims. *See Wright*, 29 F.3d at 1252; *Contreras v. Suncast Corp.*, 237 F.3d 756, 766 (7th Cir. 2001) (noting that the district court's decision to relinquish supplemental jurisdiction is the norm).

A district court has wide discretion to remand a removed case involving pendent claims to state court when a remand would "best promote the values of economy, convenience, fairness, and comity." *Carnegie-Mellon Univ. v. Cohill*, 108 S.

11

Ct. 614, 619–20 (1988); *see J.O. v. Alton Cmty. Unit Sch. Dist. 11*, 909 F.2d 267, 270 (7th Cir. 1990) (noting that "a district court may exercise its discretion to remand a case back to state court when all independent federal bases for jurisdiction are gone and only pendent state claims remain"). This Court thus exercises its discretion to remand the remaining state-law claims, Counts I–V and IX, to the Circuit Court of Cook County.

**IV. Conclusion**

For the reasons explained above, this Court grants Defendants' motions to dismiss [9], [10], dismisses Count VI without objection, and dismisses Counts VII and VIII with prejudice for failure to state a claim. In addition, with the federal claims dismissed, this Court declines to exercise supplemental jurisdiction over Plaintiff's state-law claims. The Clerk is directed to remand the remaining state-law claims (Counts I, II, III, IV, V, and IX) forthwith to the Circuit Court of Cook County.

Dated: September 20, 2021

                                            Entered:

                                            John Robert Blakey
                                            United States District Judge